UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN LUDWIG,

    Plaintiff,

v.                                Case No.  3:20-cv-910-J-34MCR

DB USA CORE CORPORATION,

    Defendant.
_____/

### REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Renewed Motion to Dismiss Amended Complaint ("Motion") (Doc. 23), Plaintiff's response in opposition thereto ("Response") (Doc. 24), and Defendant's Reply (Doc. 34). For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion be **GRANTED in part** and **DENIED in part**.

**I.  Introduction**

On May 4, 2020, Plaintiff filed a complaint in state court against the original defendants, Deutsche Bank AG, DB USA Corporation and Deutsche Bank

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

Securities, Inc., under the Florida Whistle-Blower Act ("FWA"), Fla. Stat. § 448.101, *et seq.* (*See* Doc. 3-1.) On June 11, 2020, the original defendants removed the action to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, based on diversity jurisdiction. (*See* Doc. 1.) Upon entry of the court's order granting the parties' joint motion to substitute the proper party defendant, Plaintiff filed the Amended Complaint on June 23, 2020, naming the correct Defendant, DB USA Core Corporation ("Defendant"). (Doc. 8.) On August 12, 2020, the court granted Defendant's motion to change venue, ordered that the case be transferred to this District, and denied as moot any pending motions, including Defendant's motion to dismiss the Amended Complaint. (*See* Docs. 9, 16, 20.) On August 13, 2020, Defendant renewed its Motion to Dismiss Plaintiff's Amended Complaint and Plaintiff also submitted his Response thereto. (Docs. 23 & 24.) With the Court's permission, on September 1, 2020, Defendant submitted its Reply. (Doc. 34.) On September 23, 2020, the Motion was referred to the undersigned for a report and recommendation regarding an appropriate resolution. (Doc. 37.)

    II.    **Plaintiff's Amended Complaint**

In the Amended Complaint, Plaintiff alleges he began his employment with Defendant in August of 2016 as Vice President of Compliance in Jacksonville, Florida. (Doc. 8 at ¶ 7.) According to Plaintiff, Defendant is "subject to various state and federal regulations and rules." (*Id.*) In the section titled General Allegations, Plaintiff raises additional allegations under the following sub-

2

headings: (1) "Trump/Pence Inaugural Issues"; (2) "Employee Personal Trading"; (3) "Private Investment Transactions"; and (4) "FINRA Registration Issues." (*Id.* at 2-5.)

First, as to the "Trump/Pence Inaugural Issues" allegations, Plaintiff alleges that it is well known that Defendant "has been involved for a number of years with extending loans to Donald Trump, members of his family, and various business enterprises including the Trump Organization." (*Id.* at ¶ 8.) Plaintiff claims that Defendant was "involved in financial transactions with the state of Indiana" and that, "at the time of the 2016 Presidential elections [sic], Trump's running mate Mike Pence was the governor of Indiana." (*Id.* at ¶ 9.) According to Plaintiff, "[v]arious regulations prohibited [Defendant] from making a contribution to the Trump/Pence inauguration because Pence was still the governor of Indiana." (*Id.* at ¶ 10.) Plaintiff then avers that "[a] senior level compliance leader screamed over the phone that Plaintiff had to explain why a senior level executive at DEUTSCHE BANK would not be allowed to make a contribution to purchase a table at a fundraiser for the Trump/Pence inauguration while Pence remained the Governor of Indiana." (*Id.* at ¶ 11.) Plaintiff alleges that "[a]s a result and over Plaintiff's objection, [Defendant] ordered a table but withheld payment until after Pence resigned as Governor of Indiana." (*Id.* at ¶ 12.)

Second, under the "Employee Personal Trading" allegations, Plaintiff claims that Defendant is required to monitor its employee's personal trading

3

activities "[a]s part of the required supervisory process." (*Id.* at ¶ 13.) Plaintiff also asserts that in August of 2016, when he began his employment with Defendant, there was a backlog dating back to November 2014 of thousands of statements regarding employees' personal trading activities that had not been reviewed. (*Id.* at ¶¶ 14-15.) Plaintiff alleges that Defendant's "manual process of review and the very significant backlog of outstanding statements" made it "impossible to claim, as was required by law, that effective supervision was being conducted." (*Id.* at ¶ 16.) Plaintiff claims that it was brought to his attention "in the spring of 2017[,] that the electronic feeds provided for some personal trading activity by employees was [sic] not properly working and there were tens of thousands of transactions dating back years that had never been reviewed." (*Id.* at ¶ 17.) Plaintiff states that he "objected to this lack of supervision of employee personal trading and the related reporting which contained false certifications of compliance." (*Id.* at ¶ 18.)

Third, as to his "Private Investment Transactions" allegations, Plaintiff asserts that Defendant "had inconsistent processes for the review of investments by employees in private securities transactions, and adopted a more lenient approach in the review of these requirements for more senior[-]level employees." (*Id.* at ¶ 19.) Plaintiff claims that "over his objection," he "was directed by the head of Compliance to find ways to approve transactions for senior[-]level employees and that it was not necessary to do so for lower[-]level employees." (*Id.* at 20.) Plaintiff alleges that Defendant justified its actions by "asserting that it

4

was important for the bank to keep senior[-]level bankers happy" as Defendant could not afford to lose those employees.  (*Id.* at ¶ 21.)

Fourth, with respect to his "FINRA Registration Issues" allegations, Plaintiff alleges that Defendant "is subject to rules as a registered broker[-]dealer which are very specific about the requirements of securities registration to conduct business activity[,] both as when employees must be registered at the outset and when terminated."  (*Id.* at ¶ 22.)  According to Plaintiff, Defendant "consistently and regularly violated many of these requirements."  (*Id.* at ¶ 23.)  When he joined Defendant, Plaintiff claims he was initially informed by other employees of "examples of U-4s, U-5s and required examination deadlines being missed or late filings, largely due to completely inadequate tracking and reporting systems, technology and processes."  (*Id.* at ¶¶ 23-24.)  Plaintiff further alleges that he "consistently objected to and opposed the practices" of Defendant, "inclusive [of] but not limited to the areas of objection and opposition set forth above, which resulted in non-compliance with federal, state, and securities industries [sic] laws, rules[,] and regulations."  (*Id.* at ¶ 25.)

In the Amended Complaint's single count under the FWA, Plaintiff incorporates his previous allegations and claims that he complained to Defendant "that its policies were in violation of numerous laws and regulations," these "complaints constituted objections to violation of laws[,] rules[,] and regulations under the [FWA]," and "[r]ather than take steps to comply, [Defendant] took away additional responsibilities from Plaintiff."  (*Id.* at ¶¶ 28-32.)  Plaintiff also alleges

5

that Defendant terminated his employment on May 18, 2018 and that he was unemployed for fifteen months thereafter.  (*Id.* at ¶¶ 33-34.)  According to Plaintiff, "[a]s a direct and proximate result of [Defendant's] unlawful and retaliatory acts," Plaintiff suffered various injuries, including loss of earnings and earning capacity, loss of enjoyment of life, injury to reputation, and severe emotional distress.  (*Id.* at ¶ 35.)  As relief, Plaintiff asks the Court to: (1) declare Defendant's conduct to be a violation of Plaintiff's rights under the FWA; (2) enjoin Defendant from engaging in such conduct; (3) award restitution damages to Plaintiff for lost wages, benefits, and other renumeration; (4) award Plaintiff attorney's fees and costs; (5) award pre-judgment and post-judgment interest; and (6) grant any other relief deemed appropriate.  (*Id.* at ¶ 36.)

### III.  Standard

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 680. In evaluating the sufficiency of a complaint, a court should make reasonable inferences in plaintiff's favor, but is "not required to draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal citation and quotation marks omitted). "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Id.* (internal citation and quotation omitted); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true"). The Court must limit its consideration to the complaint and its attachments. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam).

In determining whether to grant or deny a motion to dismiss, the Court must evaluate the complaint "on two dimensions." *Allmond v. Bank of Am.*, Case No. 3:07-cv-186-J-33JRK, 2008 WL 205320, at *3 (M.D. Fla. Jan. 23, 2008). First, the Court must assess whether all the necessary elements required for

7

recovery are addressed in the complaint. *Id.* "Second, the Court must determine whether the complaint addresses these elements with factual material sufficient to raise a right to relief beyond mere speculation." *Id.* "This material can be either direct or inferential." *Id.* at *5. "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Nettles v. City of Leesburg–Police Dep't*, 415 F. App'x 116, 120 (11th Cir. Dec. 22, 2010) (internal citations and quotation marks omitted).

Further, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**IV.   Discussion**

Under the FWA, a cause of action was created which was "designed 'to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public.'" *Evey v. Creative Door & Millwork, LLC*, Case No. 2:15-cv-441-FtM-29MRM, 2016 WL 1321597, at *3 (M.D. Fla. Apr. 5, 2016) (quoting *Arrow Air, Inc. v. Walsh*, 645 So.2d 422, 424 (Fla. 1994)). The FWA states, in part, that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is

8

in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). The FWA defines "law, rule, or regulation" to include "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4). However, the FWA "does not apply to violations of 'public policy' because 'the legislature did not intend to create a cause of action for what essentially amounts to an internal and personal dispute between [a plaintiff and his] employers. By the definition provided in section 448.101(4), the phrase 'law, rule, or regulation' refers to enactments of a legislative or administrative forum.'" *Bush v. Raytheon Co.*, 373 F. App'x 936, 940 (11th Cir. 2010) (quoting *Forrester v. John H. Phipps, Inc.*, 643 So.2d 1109, 1111-12 (Fla. Dist. Ct. App. 1994)) (finding that a "funding statement delineating the terms of engineering services under a government contract" was not "a law, rule or regulation enacted by a legislative or administrative body" and, thus, not a rule, law, or regulation within the meaning of the FWA).

To state a *prima facie* claim under the FWA, an aggrieved party must establish the following: "1) that he objected to or refused to participate in any illegal activity, policy or practice of defendants; 2) he suffered an adverse employment action; and 3) the adverse employment action was causally linked to his objection or refusal." *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So.3d 904, 916 (Fla. Dist. Ct. App. 2013). To establish the first element, a plaintiff must allege that he "objected to or refused to participate in (i) an illegal activity, policy,

9

or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer." *Evey*, 2016 WL 1321597, at *3 (quoting *McIntyre v. Delhaize Am., Inc.*, No. 8:07-cv-2371-T-30TBM, 2009 WL 1039557, at *3 (M.D. Fla. Apr. 17, 2009), *aff'd*, 403 F. App'x 448 (11th Cir. 2010)).

Defendant argues that the Amended Complaint should be dismissed because Plaintiff fails to state a claim under the FWA. (*See generally* Docs. 23 & 34.) Specifically, Defendant argues that Plaintiff fails to identify a specific law, rule, or regulation that Defendant purportedly violated. (Doc. 23 at 6-8.) Defendant also contends that Plaintiff fails to allege "an actual violation of said law, rule, or regulation" and that each of the purported acts or practices Plaintiff alleges, even when accepted as true, fail to allege an actual violation of a law, rule, or regulation. (*Id.* at 8-10 (emphasis added).) Moreover, Defendant contends that Plaintiff's cursory and conclusory FINRA allegations do not support a claim under the FWA "because FINRA rules do not fall within the FWA's definition of a 'law, rule, or regulation.'" (*Id.* at 10-11.) Defendant argues that "Plaintiff's FINRA Allegations are irrelevant and cannot support a claim under the FWA as a matter of law," and, as such, "should be dismissed with prejudice." (*Id.* at 11.)

Defendant also contends that the Amended Complaint should be dismissed because Plaintiff "fails to allege a causal connection between any of the alleged statutorily protected activit[ies] and an unlawful retaliatory act." (*Id.* at

10

11-16.) Defendant argues that Plaintiff's termination is the only potentially actionable adverse action and he fails to allege, as a matter of law, a causal connection between his alleged objections and his termination. (*Id.* at 13-16.) Lastly, Defendant argues that Plaintiff does not have a basis for seeking declaratory or injunctive relief, and that such requests should be dismissed or stricken from the Amended Complaint. (*Id.* at 16-17.)

In his Response, Plaintiff addresses some, but not all of Defendant's arguments. (*See* Doc. 24.) Failing to identify the specific laws, rules, or regulations that Defendant purportedly violated, Plaintiff counters that the FWA is a remedial statute that should be construed liberally and that Plaintiff adequately pled causation, which is "an element of retaliation but it does not need to be pled with specificity for obvious reasons." (*Id.* at 1-2.) Plaintiff contends that if he cannot prove causation at trial, "or cannot meet his burden upon filing a motion under Rule 56, he will lose." (*Id.* at 2.) Plaintiff argues that at this preliminary stage "we are simply looking at an Amended Complaint and have had no opportunity to conduct discovery." (*Id.*) Nevertheless, Plaintiff argues that the Amended Complaint contains sufficient allegations regarding causation, including the allegations in paragraphs 30-34, to defeat Defendant's Motion. (*Id.* at 2-3.)

Plaintiff then argues that FINRA rules are "laws, rules, or regulations" sufficient to establish a claim under the FWA because "[a] FINRA rule is a rule or regulation of the Securities and Exchange Commission because the SEC had to review and approve every FINRA rule, and any discipline imposed by FINRA is

11

applicable to the SEC and to the federal courts." (*Id.* at 3.)  In support, Plaintiff cites to *Tuberville v. Tin. Indus. Reg. Auth.*, 874 F.3d 1268, 1270-71 (11th Cir. 2017), and claims that "essentially, the SEC has delegated its disciplinary authority to [Self-Regulatory Organizations] ["SROs"] like FINRA while at the same time reserving to itself and the federal courts the final reviews." (*Id.* at 3-4.) Additionally, Plaintiff contends that "[n]othing in § 442.102 [of the FWA] requires initial enforcement by a governmental agency" and "[i]t is a rule or regulation because the SEC considers it to be so by approving it as part of the disciplinary process and to maintain order under the Securities Act." (*Id.* at 4.)

Next, Plaintiff argues that even if FINRA regulations were not laws, rules, or regulations under the FWA, his objections would still be protected "as long as he reasonably believed he was objecting to an activity, policy, or practice which violated a law, rule or regulation." (*Id.*)  According to Plaintiff, in order to satisfy the first prong of a claim under the FWA, "all that is required is that the employee have a good faith, objectively reasonable belief that his activity is protected by the statute." (*Id.* at 4-5 (quoting *Luna v. Walgreens, Co.*, 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008) (internal quotations and alterations omitted)).)  Plaintiff also argues that his "duties were to monitor certain legal and regulatory requirements" and that "he opposed the deviations which placed his employer at risk of sanction." (*Id.* at 5.)  He argues that Defendant assigned these duties to him "and thus[,] he reasonably expected that he was enforcing the applicable rules and regulations relating to his industry." (*Id.*)  As such, Plaintiff contends, "it is

12

certainly plausible that he had a good faith, objectively reasonable [belief], that his activity in objecting to violation of FINRA rules and regulations were [sic] protected." (*Id.* at 5-6.)

Plaintiff also contends that Defendant incorrectly implied that "retaliation claims depend on temporal proximity" and argued that "temporal proximity is an element of any retaliation claim," which Plaintiff claims is not correct. (*Id.* at 6.) Plaintiff also appears to argue that Defendant's opposition to his request for declaratory and injunctive relief is premature as no "discovery has been taken, no dispositive motions filed, and not verdict returned." (*Id.*)

First, the undersigned finds that while Plaintiff alleges that he objected to Defendants "practices" which in turn "resulted in non-compliance with federal, state, and securities industries laws, rules[,] and regulations" (*see, e.g.*, Doc. 8 at ¶ 25), such allegations are insufficient to state a claim under the FWA. "In order to state a [FWA] claim, the Plaintiff must refer to specific laws, rules[,] or regulations which Defendant violated." See *Pinto v. Microsoft Corp.*, No. 12-60509-CIV, 2012 WL 4479059, at *3 (S.D. Fla. Sept. 28, 2012) (citing *El Toro Exterminator of Fla. v. Cermada*, 953 So.2d 616, 618 (Fla. Dist. Ct. App. 2007)) (finding that plaintiff's complaint, which failed to cite to any specific violation of law, rule, or regulation, failed to state a claim under the FWA and allowing plaintiff to amend the complaint); *see also Clifton v. Titusville Ctr. for Surgical Excellence*, No. 6:15-cv-1604-Orl-37KRS, 2016 WL 406383, at *3 n.4 (M.D. Fla. July 29, 2016) (citing *Little v. Foster Wheeler Constructors, Inc.*, No. 09-61003-

CIV, 2010 WL 2035546, at *8 (S.D. Fla. May 24, 2010)) ("Plaintiff did not, however, identify a law, rule, or regulation as a basis for his objections to McShane's conduct; as such, his objections concerning McShane's alleged violations of law are not actionable."). Nevertheless, in *Pinto*, the court noted that the plaintiff's "failure to include citations to laws, rules, or regulations [was] a mere technical deficiency" since discovery was ongoing and the complaint described the underlying conduct which the plaintiff alleged was illegal. 2016 WL 4479059, at *4. As such, the undersigned recommends that the Motion be granted with respect to Defendant's arguments that Plaintiff's failure to identify a particular law, rule, or regulation warrants dismissal of the Amended Complaint. However, the undersigned recommends that Plaintiff be given the opportunity to amend his complaint and specifically plead the alleged laws, rules, and regulations that Defendant purportedly violated.

To the extent Defendant also argues that Plaintiff's claims cannot stand on his vague allegations that Defendant violated FINRA regulations, because FINRA does not qualify as a law, rule, or regulation for purposes of the FWA, the undersigned is not persuaded that the Court must, as a matter of law, find that no claim under the FWA may lie on alleged violations of FINRA regulations. While Defendant cites to *Odom v. Citigroup Glob. Markets Inc.*, 62 F. Supp. 3d 1330, 1337 (N.D. Fla. 2014), for the proposition that FINRA rules do not qualify as a "law, rule, or regulation" under the FWA, other courts have rejected similar arguments at the motion-to-dismiss stage. In *Finch v. Morgan Stanley & Co.*

14

*LLC*, an employer argued, in support of its motion to dismiss, that its former employee's retaliation claim under the FWA failed as a matter of law because FINRA rules did not qualify as laws, rules, or regulations under the statute.  No. 15-81323-CIV, 2016 WL 4248248, at *9 (S.D. Fla. Aug. 11, 2016).  The Court noted that "FINRA is a private securities organization responsible for discipline of its members who violate its rules."  *Finch*, 2016 WL 4248248, at *9 (citing *Fiero v. Fin. Indus. Regul. Auth., Inc.*, 660 F.3d 569, 571-72 (2d Cir. 2011)) ("FINRA is 'responsible for regulatory oversight of all securities firms that do business with the public,' and 'has the power to initiate a disciplinary proceeding against any FINRA member . . . for violating any FINRA rule . . . .'").  The court rejected the employer's reliance on *Odom* in support of its motion to dismiss the plaintiff's complaint under the FWA, observing that it was "the only case that appears on the subject, . . .  which states, in *dicta*, that 'FINRA rules, which are privately enforced, do not appear to qualify as a "law, rule, or regulation" under the FWA. Fla. Stat. § 448.102(3).'"  *Finch*, 2016 WL 4248248, at *9 (internal citation omitted).  The court concluded that, at that stage, it was "not convinced . . . to dismiss [the FWA] count as a matter of law based on one case that states in *dicta* that the FINRA rules 'do not *appear* to qualify' as rules under the FWA."  *Id.* (emphasis in original).  Similarly, the undersigned recommends that Defendant's

arguments regarding the dismissal with prejudice of Plaintiff's claims based on alleged FINRA violations are unavailing at this stage of the proceedings.[2]

Second, at this stage of the proceedings, the undersigned finds Defendant's arguments regarding Plaintiff's failure to plead sufficient facts to establish an *actual* violation of a law, rule, or regulation to be unavailing. There appears to be a split of authority as to whether section 448.102(3) of the FWA requires a plaintiff to allege an *actual* violation of law, rule, or regulation, pursuant to the Fourth District Court of Appeal's decision in *Aery*, 118 So.3d at 916, as opposed to a reasonable, good faith belief that a violation has occurred, pursuant to the Second District Court of Appeal's decision in *Kearns v. Farmer Acquisition Co.*, 157 So.3d 458, 465 (Fla. Dist. Ct. App. 2015)). *See Evey*, 2016 WL 1321597, at *4. "When ruling on an issue of Florida law that the Florida Supreme Court has not spoken on, the federal courts are bound by the decisions of Florida's district court[s] of appeal." *Burns v. Medtronics, Inc.*, No. 8:15-cv-2330-T-17TBM, 2016 WL 3769369, at *5 (M.D. Fla. July 12, 2016) (citing *Canalejo v. ADG, LLC*, No. 8:14-cv-17-T-MAP, 2015 WL 4992000, at *1 (M.D. Fla. Aug. 19, 2015)). "However, as the Middle District of Florida has already established, *Aery* remains the controlling law on the issue because the actual violation standard in *Kearns was discussed in dicta*." *Burns*, 2016 WL 3769369, at *5 (citing *Canalejo*,

---

[2] Nevertheless, the undersigned recommends that when amending his complaint, Plaintiff be directed to identify and describe with greater specificity the particular rules or regulations under FINRA that formed "the basis for his objections." *See Clifton*, 2016 WL 4063383, at *4 n.5.

2015 WL 4992000 at 2-3) (emphasis in original); *see also Lapham v. Walgreen Co.*, 6:19-cv-579-Orl-40DCI, 2019 WL 3082581, at *2-3 (M.D. Fla. July 15, 2019) (quoting *Burns*, 2016 WL 3769369, at *5) (applying the *Aery* standard and noting "[a]ll that is required to satisfy the first prong" of a claim under the FWA "is a 'plausible allegation of what Plaintiff, in good faith, believes to be a violation of a law, rule[,] or regulation'"); *Rivera v. Spirit Airlines, Inc.*, No. 19-62298-CIV, 2020 WL 491454, at *2 (S.D. Fla. Jan. 30, 2020) (concluding that "despite the different approaches, '*Aery* remains the controlling law on the issue because the discussion concerning the actual violation standard in Kearns was only in *dicta*'") (collecting cases). *Contra Grady v. Wal-Mart Stores East, LP*, 237 F. Supp. 3d 1223, 1227-28 (M.D. Fla. 2017) (finding that, in the absence of a decision by the Supreme Court of Florida on the matter, the "actual violation" standard announced in *Kearns* would be adopted and applied by the Supreme Court of Florida). Thus, in applying the *Aery* standard, Defendant's arguments regarding Plaintiff's failure to plead an actual violation of law, rule, or regulation fail.

Additionally, to the extent Defendant argues the Amended Complaint is also due to be dismissed because Plaintiff failed to sufficiently allege causation, the undersigned observes that the arguments raised in the Motion are more suitable for resolution in the context of summary judgment, rather than at the pleading stage. Lastly, to the extent Defendant requests that the Court dismiss or strike Plaintiff's request for declaratory and injunctive relief, those arguments are also premature. *See Roll v. USAA Gen. Indem. Co.*, No. 3:19-cv-356-J-

34MCR, 2020 WL 1443995, at *2 (M.D. Fla. Mar. 25, 2020) (noting that the proper procedural vehicle for challenging a request for relief is a motion to strike under Rule 12(f), but finding it was not necessary to resolve the defendant's request to strike the plaintiff's requested relief from the complaint at such an early stage of the proceedings). Therefore, the undersigned recommends that Defendant's Motion be denied to the extent it seeks to dismiss or strike Plaintiff's request for injunctive and declaratory relief.[3]

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 23**) be **GRANTED** to the extent stated herein and the Amended Complaint (**Doc. 8**) be **DISMISSED without prejudice**.

**DONE AND ENTERED** in Jacksonville, Florida, on January 19, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

---

[3] Defendant may renew these requests at a later date, if necessary, through proper motions. *See, e.g.*, *Schmidt v. C.R. Bard, Inc.*, No. 6:14-cv-62, 2014 WL 5149175, at *7 (S.D. Ga. Oct. 14, 2014) (collecting cases in which the courts determined that it was appropriate to strike a prayer for relief unavailable as a matter of law); see also *Gibson v. Resort at Paradise Lakes, LLC*, No. 8:16-cv-791-T-36AAS, 2016 WL 7049265, at *1 (M.D. Fla. Dec. 5, 2016) ("A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.").