## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

STEVEN LUDWIG,

        Plaintiff,

vs.                                    Case No. 3:20-cv-910-MMH-MCR

DB USA CORE CORPORATION,

        Defendant.

_____

### O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Second Amended Complaint and Motion to Strike Certain Claims for Relief (Doc. 48; SAC Motion), filed by Defendant DB USA Core Corporation (DBUSACC) on April 13, 2021.  In the SAC Motion, DBUSACC moves for dismissal of Plaintiff Steven Ludwig's Second Amended Complaint (Doc. 45; SAC) for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), and also moves to strike several of Ludwig's claims for relief pursuant to Rule 12(f).  See SAC Motion at 8, 23.  Ludwig filed a response in opposition to the SAC Motion on April 29, 2021.  See Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Second Amended Complaint (Doc. 51; Response).   Accordingly, this matter is ripe for review.

## I.  Procedural History

On May 4, 2020, Ludwig initiated this action by filing a one-count complaint in state court against the original defendants Deutsche Bank AG, DB USA Corporation, and Deutsche Bank Securities, Inc.  See Notice of Filing Corrected Composite Exhibit "A" to Defendants' Notice of Removal [DE 1], Composite Exhibit A (Doc. 3-1; Original Complaint).   In the Original Complaint, Ludwig asserted a retaliation claim under the Florida Whistle-Blower Act (FWA), Florida Statutes sections 448.101, et seq.[1]  Id.   On June 11, 2020, the original defendants removed the action to the United States District Court for the Southern District of Florida, Fort Lauderdale Division. See Defendants' Notice of and Petition for Removal (Doc. 1).   Then, on June 17, 2020, the parties filed a joint motion to dismiss the original defendants, substitute DBUSACC as the "proper" defendant to this action, and amend the Original Complaint to reflect such changes.  See Joint Motion to Substitute Proper Party Defendant, Notice of Voluntary Dismissal of Currently Named Defendants [ ] and Motion to Amend Case Style (Doc. 6; Joint Motion).   The court granted the parties' Joint Motion the following day.  See Order Granting

---

[1]      "To establish a prima facie case under the FWA, a plaintiff must show that: (1) he objected to or refused to participate in any illegal activity, policy, or practice of the employer; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to his objection or refusal."   LE Publications, Inc. v. Kohl, 298 So. 3d 642, 645 (Fla. 4th DCA 2020) (citing Aery v. Wallace Lincoln-Mercury, LLC, 118 So. 3d 904, 916 (Fla. 4th DCA 2013)).

Plaintiff's Motion to Substitute Proper Defendant (Doc. 7).   Ludwig filed his amended complaint on June 23, 2020, naming DBUSACC as the sole defendant. See Amended Complaint (Doc. 8; Amended Complaint).   On July 7, 2020, DBUSACC moved for entry of an order transferring the case from the United States District Court for the Southern District of Florida, Fort Lauderdale Division, to the United States District Court for the Middle District of Florida, Jacksonville Division.   See Defendant's Motion to Transfer Venue (Doc. 9; Motion to Transfer).   The court granted the Motion to Transfer on August 12, 2020, and ordered that the case be transferred to this Court.   See Order on Motion for Change of Venue (Doc. 20), at 5.

While the Motion to Transfer was pending, DBUSACC filed a motion to dismiss Ludwig's Amended Complaint for failure to state a claim under Rule 12(b)(6).   See Defendant's Motion to Dismiss Amended Complaint (Doc. 16; Initial Motion).   But in granting the Motion to Transfer, the court directed the clerk of the court to deny, as moot, all pending motions in the case, which included DBUSACC's Initial Motion.   See id. at 5.   As such, on August 13, 2020, DBUSACC filed a renewed motion seeking dismissal of Ludwig's Amended Complaint for failure to state a claim under Rule 12(b)(6).   See Defendant's Renewed Motion to Dismiss Amended Complaint (Doc. 23;

Renewed Motion).[2]  See generally id.  The same day, Ludwig filed a response in opposition to the Renewed Motion.  See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Doc. 24).  With leave of Court, DBUSACC filed a reply on September 1, 2020.  See Defendant's Reply in Support of [DE 23] Defendant's Renewed Motion to Dismiss [DE 8] the Amended Complaint (Doc. 34); see also Order (Doc. 28).

On September 23, 2020, the undersigned referred DBUSACC's Renewed Motion to the Honorable Monte C. Richardson, United States Magistrate Judge, for preparation of a report and recommendation regarding an appropriate resolution of the matter.  See Order (Doc. 37).  The Magistrate Judge entered a Report and Recommendation (Doc. 40; Report) on January 19, 2021.  In the Report, the Magistrate Judge recommended that the Court grant DBUSACC's Renewed Motion to the extent that the Court find that Ludwig had failed to identify any specific law, rule, or regulation in his Amended Complaint, as required to state a claim under the FWA.  See id. at 13-14.  However, the Magistrate Judge also recommended that Ludwig be given leave to further

---

[2]      In the Renewed Motion, DBUSACC argued that Ludwig failed to identify any specific laws, rules, or regulations that it purportedly violated, and failed to allege an actual violation of any law, rule, or regulation.  See Renewed Motion at 6-8.  Additionally, DBUSACC contended that Ludwig's citation to FINRA rules was unavailing because FINRA rules do not qualify as a law, rule, or regulation for purposes of the FWA.  Id. at 10-11.  DBUSACC also asserted that Ludwig failed to allege a causal connection between any alleged protected activity and an unlawful retaliatory act, as necessary to state a claim to relief under the FWA. Id. at 11-16.  Lastly, DBUSACC argued that Ludwig's requests for injunctive and declaratory relief were without legal basis, and should therefore be stricken from the Amended Complaint. Id. at 16-17.

amend his complaint to identify the specific laws, rules, and/or regulations that DBUSACC allegedly violated.  <u>Id.</u> at 14.  Additionally, the Magistrate Judge recommended that the Court defer ruling on the question of whether a FINRA rule qualifies as a "law, rule, or regulation" for purposes of the FWA until a later stage in the proceedings.  <u>Id.</u> at 14-16.

In considering DBUSACC's argument that Ludwig had failed to plead sufficient facts to establish an actual violation of a law, rule, or regulation, the Magistrate Judge observed the existence of conflicting authority relating to the first element of an FWA retaliation claim.  <u>Id.</u> at 16-17.  With regard to the first element, which requires a plaintiff to show that he "objected to or refused to participate in any illegal activity policy, or practice of the employer," <u>LE Publications, Inc.</u>, 298 So. 3d at 645, courts are divided on the question of whether the FWA[3] requires a plaintiff to allege that he objected to <u>an actual violation</u> of a law, rule, or regulation, as contemplated in <u>Kearns v. Farmer Acquisition Co.</u>, 157 So. 3d 458, 462-65 (Fla. 2d DCA 2015), or permits a plaintiff to allege only that he had <u>a good faith, objectively reasonable belief</u> that the actions to which he objected were illegal, as determined in <u>Aery</u>, 118 So. 3d at 906.[4]  Upon consideration of the conflicting authority, the Magistrate Judge

---

[3]      Section 448.102(3) of the FWA prohibits an employer from retaliating against an employee who has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Florida Statutes section 448.102(3).

[4]      <u>Compare, e.g.</u>, <u>Nardella v. Atlantic TNG, LLC</u>, No. 8:19-cv-1152-T-33JSS, 2020 WL

recommended that the Court conclude that the Court apply the more liberal <u>Aery</u> standard in this case.   <u>See</u> Report at 16-17.

DBUSACC filed an objection to the Report on February 2, 2021.   <u>See</u> Defendant's Objection to Report and Recommendation [DE 40] on Defendant's Renewed Motion to Dismiss Amended Complaint (Doc. 41; Objection).   In the Objection, DBUSACC requested only that the Court reject the recommendation in the Report that a plaintiff can state a prima facie FWA retaliation claim without pleading <u>an actual violation</u> of a law, rule, or regulation.   Objection at 1-2.   Ludwig did not object to the Report; however, he did file a response to DBUSACC's Objection on February 4, 2021.   <u>See</u> Plaintiff's Corrected Response to Objections to the Report and Recommendation (Doc. 43; Response to Objection).   Notably, neither Ludwig nor DBUSACC objected to the Magistrate Judge's recommendations that Ludwig's Amended Complaint be dismissed without prejudice and that he be permitted to file a second amended complaint.

---

2331179 (M.D. Fla. May 11, 2020) (applying the <u>Aery</u> "reasonable belief" standard), and <u>Canalejo v. ADG, LLC</u>, No. 8:14-cv-17-T-MAP, 2015 WL 4992000 (M.D. Fla. Aug. 19, 2015) (same), <u>with, e.g.</u>, <u>Pierre v. AIDS Healthcare Foundation, Inc.</u>, No. 19-62556-CIV-SINGHAL, 2020 WL 6381557 (S.D. Fla. Oct. 30, 2020) (applying the "actual violation" standard discussed in <u>Kearns</u>); <u>Graddy v. Wal-Mart Stores East, LP</u>, 237 F. Supp.3d 1223 (M.D. Fla. 2017) (same); and <u>Obukwelu v. Tallahassee Memorial Healthcare, Inc.</u>, No. 4:15cv55-MW/CAS, 2015 WL 11110552 (N.D. Fla. June 25, 2015) (same).   In citing these cases, the Court recognizes that decisions of other district courts are not binding but may be persuasive.   <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Upon review of the Report, the file in the case, and the relevant authority, the Court adopted the Magistrate Judge's recommended resolution of the Renewed Motion but otherwise declined to adopt the Report including the contested analysis regarding the applicable pleading standard for an FWA retaliation claim. <u>See</u> Order (Doc. 44) at 4, 7.[5] Thus, the Court dismissed Ludwig's Amended Complaint but allowed him an opportunity to file a second amended complaint in which he specified the laws, rules, and/or regulations that DBUSACC allegedly violated. <u>Id.</u>

On March 25, 2021, Ludwig timely filed the SAC, and Defendant responded by filing the SAC Motion seeking dismissal for failure to state a claim pursuant to Rule 12(b)(6) and to strike certain claims under Rule 12(f). <u>See generally</u> SAC; SAC Motion.

## II.    Standards of Review

### a. Rule 12(b)(6)

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true.

---

[5]     In doing so, the Court observed that it was "not altogether clear that Ludwig [would] seek to rely on the good faith belief standard" in filing a second amended complaint. <u>See id.</u> at 5. Additionally, the Court noted that the contested question of Florida law presented in DBUSACC's Renewed Motion was, at that time, before the Eleventh Circuit Court of Appeals in the case of <u>Butterfield v. JetBlue Airways Corp.</u>, No. 20-60660-CIV, 2020 WL 5627389, at *1 (S.D. Fla. Aug. 17, 2020), <u>appeal docketed</u>, No. 20-13473 (11th Cir. Sept. 15, 2020). On February 1, 2022, the Eleventh Circuit issued a decision resolving that appeal. <u>Butterfield v. JetBlue Airways Corp.</u>, No. 20-13473, 2022 WL 291003 (11th Cir. Feb. 1, 2022). In doing so, however, the court determined that it "need not resolve whether [it] should follow <u>Aery</u> or <u>Kearns</u>." <u>Id.</u> at *5.

See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).   In addition, all reasonable inferences should be drawn in favor of the plaintiff.   See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).   Nonetheless, the plaintiff must still meet some minimal pleading requirements.   Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).   Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   Twombly, 550 U.S. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"   Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions

masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).   Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth."   See Iqbal, 556 U.S. at 678, 680.   Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'"   Id. at 678 (quoting Twombly, 550 U.S. at 570).   The Court's consideration is limited to those facts contained in the complaint and the attached exhibits.   Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   Iqbal, 556 U.S. at 679.   Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief."   Id.

b.  Rule 12(f)

Rule 12(f) provides that upon motion by a party, the Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading.   That said, a motion to strike is considered "a drastic remedy and is disfavored by the courts."   Schmidt v. Life Ins. Co. of N. Am., 289 F.R.D. 357,

358 (M.D. Fla. 2012) (citing <u>Reyher v. Trans World Airlines</u>, 881 F. Supp. 574, 576 (M.D. Fla. 1995)).   Therefore, a Rule 12(f) motion "should be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."   <u>Id.</u> (internal quotations and citation omitted).

### III.   Ludwig's SAC[6]

In August of 2016, DBUSACC employed Ludwig as "VP of Employee Compliance" in Jacksonville, Florida.   <u>See</u> SAC ¶ 7.   DBUSACC terminated his employment on May 18, 2018.   <u>Id.</u> ¶ 33b.[7]   In the SAC, Ludwig seeks redress for DBUSACC's alleged violations of the FWA.   <u>See generally</u> <u>id.</u>   He asserts a single count alleging that DBUSACC retaliated against him for complaining—and thereby objecting to—"Deutsche Bank"[8] that its policies were in violation of laws, rules, and regulations.   <u>See</u> <u>id.</u> ¶¶ 29b–31b.

---

[6]   In considering the SAC Motion, the Court must accept all factual allegations in Ludwig's SAC as true, consider the allegations in the light most favorable to him, and accept all reasonable inferences that can be drawn from such allegations.   <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003); <u>Jackson v. Okaloosa Cnty., Fla.</u>, 21 F.3d 1531, 1534 (11th Cir. 1994).   As such, the facts recited here are drawn from the SAC, and may well differ from those that ultimately can be proved.

[7]   Ludwig misnumbers the paragraphs of his SAC.   He starts at 1 and proceeds sequentially through 42, but then numbers the paragraphs that follow 42 as starting at 28 and ending at 36.   The Court will refer to the repeated paragraph numbers as 28b – 36b.

[8]   In the SAC Motion, DBUSACC "objects to and denies" Ludwig's use of the term "Deutsche Bank" to the extent Ludwig seeks to use the term to refer to any entity other than the named Defendant, DBUSACC.   <u>See</u> SAC Motion at 1, n.1.   In the first sentence of the SAC, Ludwig assigns the term "Deutsch Bank" to take the place of "DB USA Core Corporation."   <u>See</u> SAC at 1.   Therefore, the Court construes all references to "Deutsche Bank" in the SAC to refer only to DBUSACC.

According to Ludwig, "[r]ather than take steps to comply," DBUSACC "took [ ] additional responsibilities" from him and terminated him, see id. ¶¶ 32b-33b, in violation of the FWA, which caused him to be unemployed for fifteen months, id. ¶ 34b.

In the SAC, Ludwig sets forth five subsections of allegations apparently intended to serve as factual bases for his retaliation claim.[9]  See id. ¶¶ 8-42.

### a. Trump/Pence Allegations

First, Ludwig contends that DBUSACC was "involved in financial transactions" with former President Donald Trump, his family, various business enterprises, and the State of Indiana.  Id. ¶¶ 8-9.  Additionally, Ludwig asserts that during the 2016 presidential elections, Trump's running mate, Mike Pence, was the Governor of Indiana.  Id. ¶ 9.  According to Ludwig, various rules prohibited DBUSACC from contributing to the "Trump/Pence inauguration because Pence was still governor of Indiana" including FINRA Rules 2030, 4580, and "SEC 206(4)-5."  Id. ¶ 10.  Ludwig alleges that "[a] senior level compliance leader screamed over the phone that

---

[9]      Ludwig sets forth roughly 36 paragraphs of "General Allegations" in the SAC.  See SAC ¶¶ 2-14.  However, the sole count in the SAC incorporates only paragraphs 1 through 25 of the preceding allegations.  See SAC ¶ 28.  Although this omission appears to be a scrivener's error on Ludwig's part, in his Response Ludwig failed to address DBUSACC's argument that the unincorporated allegations (i.e., paragraphs 26 through 42) are irrelevant and should be dismissed or stricken from the SAC.  Compare Response, with SAC Motion at 2 n.2.  Recognizing that a motion to strike is a drastic remedy, and unable to conclude that the unincorporated allegations have "no possible connection" to Ludwig's FWA claim, the Court declines to strike them.

[Ludwig] had to explain why a senior level executive at [DBUSACC] would not be allowed to make a contribution to purchase a table at a fundraiser for the Trump/Pence inauguration while Pence remained the Governor of Indiana." Id. ¶ 11.  "As a result," Ludwig maintains, "and over [his] objection, [DBUSACC] ordered a table but withheld payment until after Pence resigned as governor."  Id. ¶ 12.

b. Employee Personal Trading Allegations

Second, Ludwig alleges that when he began employment at DBUSACC in 2016, its process of reviewing and monitoring employee personal trading activity had been backlogged with thousands of unreviewed statements dating back to November of 2014.  According to Ludwig, this rendered it "impossible to claim" that DBUSACC was conducting effective supervision of its employees. See id. at 13-16.  Additionally, Ludwig asserts that in the spring of 2017, he learned that a defect in DBUSACC's review system existed that caused "tens of thousands" of transactions to go unreviewed.  Id. ¶ 17.  Ludwig maintains he "objected to this lack of supervision of employee personal trading and the related reporting which contained false certifications of compliance."  Id. ¶ 18. Ludwig identifies the rules and law which DBUSACC's "pattern or practice" purportedly violated as FINRA Rules 3110, 3120, 3130, 3210, and "[t]he Insider Trading and Securities Fraud Enforcement Act of 1988. . . ."  Id. ¶ 19.

### c. Private Investment Allegations

Third, Ludwig contends that DBUSACC maintained "inconsistent processes for the review of investments by employees in private securities transactions," weighted in favor of more senior-level employees. Id. ¶ 20. In this regard, Ludwig asserts that "over his objection," the "head of Compliance" directed him to find ways to approve transactions made by senior-level employees, but that he need not do so for lower-level employees. Id. ¶ 21. According to Ludwig, DBUSACC "justified this by asserting that it was important for the bank to keep senior level bankers happy as [DBUSACC] could not afford to lose those senior level employees who brought the revenue into the bank." Id. ¶ 22. Ludwig alleges that such a "policy or practice" violated FINRA Rules 3110, 3120, 3130, 3210, and "[t]he Insider Trading and Securities Fraud Enforcement Act of 1988. . . ." Id. ¶ 23.

### d. Securities Registration Allegations

Fourth, in a cursory manner, Ludwig asserts that he had objections concerning DBUSACC's compliance with securities registration requirements based upon FINRA Rule 3110(e), FINRA Form U-4, FINRA Rule 3110(a)(7), and FINRA Rule 1240. See id. ¶¶ 24-26. He states that when he joined DBUSACC, "he was advised by members of the team about examples of U-4's, U-5's, and required examination deadlines being missed or late filings, largely due to incomplete tracking and reporting systems, technology, and processes."

Id. ¶ 27.   Without saying how, to whom, or when he asserts, "Plaintiff consistently objected to and opposed the practices of [DBUSACC], inclusive, but not limited to the areas of objection and opposition set forth above, which resulted in non-compliance with federal, state, and securities industries laws, rules, and regulations."   Id. ¶ 28.

       e.  Conflict of Interest and Code of Ethics Allegations

Fifth, Ludwig contends, for the first time, [10] that he "objected to" violations of various laws, rules, and regulations[11] "related to" a number of factual allegations." [12]   See id. ¶ 42.   "Asset Management and Wealth Management were separated as business units at the beginning of 2016; however, no Code of Ethics was ever created or even considered for approval until summer of 2017."   Id. ¶ 36.   Additionally, he asserts that "Wealth Management employees were removed from coverage from the Asset Management Code of Ethics, however, they no longer had a code to follow as required by SEC rules."   Id. ¶ 37.   Ludwig also asserts that "Wealth

---

[10]    Neither the Original Complaint nor the Amended Complaint included any allegations concerning a "code of ethics" or any "conflict of interest."   See generally Original Complaint; Amended Complaint.

[11]    Ludwig identifies a litany of "laws, rules, and regulations" that DBUSACC allegedly violated, consisting of the following: FINRA Rule 3110, SEC Rule 204A-1, "Rule 10b-5 under the Securities and Exchange Act of 1934 and other federal securities laws," "Section 16(a) of the Exchange Act," "SEC Rule 17j-1 under the Investment Company Act and SEC Rule 204A-1 under the Advisers Act," and SEC Rule 204-2(a)(12).   See SAC ¶¶ 29-35.

[12]    In this subsection of the SAC, Ludwig merely identifies the requirements of various rules and regulations and makes conclusory allegations of operational challenges without alleging any facts suggesting how these things relate to or support his claim.   See SAC ¶¶ 29-42.

Management employees were mapped to the ETRA[13] system for review of personal security transactions, but many senior level employees would complain about being subject to the Asset Management Code of Ethics and would be exempted from the code rules[,]" and "[s]enior level employees requested that all Wealth Management employees be removed from the ETRA system for purposes of allowing their trades to be approved in May of 2017." Id. ¶ 38.  Ludwig includes a confusing allegation "[d]ifficulties in providing annual portfolio manager holdings to funds due to data load and data integrity issues.  Similar issues resulted in inaccurate data being provided to fund board."  Id. ¶ 39.  He next maintains that "[o]ngoing significant delays in reviewing alerts resulted in the inaccurate information being provided to the funds for their quarterly board reporting," and "[p]ersonal trading violations by employees subject to the Code of Ethics may not be reviewed until well after the reporting timeline."  Id. ¶ 40.  According to Ludwig, "[t]his occurred every quarter and was due to a variety of issues including a lack of sufficient resources to conduct the review and system reporting failures."  Id.  Ludwig also asserts that "[n]o well-documented process existed for the maintenance of Restricted Lists, Watch Lists and Rumor Lists," and "[t]he maintenance of an existing list was not kept current and poor communication existed in sharing this

---

[13]      Ludwig does not define the "ETRA system."  See generally SAC.

information with Employee Compliance," such that "[a]t one point when a review was conducted the list was nearly a year old and out of date."   Id. ¶ 41.

## IV.   Discussion

In the SAC Motion, DBUSACC sets forth several arguments in support of its contention that dismissal of the SAC is warranted under Rule 12(b)(6). See generally SAC Motion.   First, DBUSACC contends that Ludwig has failed to establish the first element of an FWA retaliation claim because he has not plausibly alleged that he engaged in protected activity by objecting to an illegal activity, policy, or practice of DBUSACC's.   See id. at 9-18.   DBUSACC additionally asserts that Ludwig has not, and cannot, plausibly allege a causal connection between his alleged protected activity and any adverse employment action.   Id. at 18-23.   Finally, DBUSACC argues that Ludwig lacks any legal basis for his request for injunctive relief.   Id. at 23-25.[14]

---

[14]   DBUSACC also contends that Ludwig has failed to state a claim of retaliation under the FWA because the "Manager Rule," which it contends applies in whistleblower cases, precludes Ludwig from showing that he engaged in protected activity, as necessary to state an FWA retaliation claim.   See SAC Motion at 9 (citing Goodwin v. Dyncorp Int'l LLC, No. 3:14-CV-116/RV-EMT, 2015 WL 12672085, at *1 (N.D. Fla. Mar. 30, 2015)).   Because the Court finds that Ludwig's SAC will be dismissed due to his pleading deficiencies, the state law issue of whether the "Managers Rule" applies to an FWA claim will be left for another day. See Rivera v. Spirit Airlines, Inc., No. 19-62298-CIV, 2020 WL 491454, at *3 (S.D. Fla. Jan. 30, 2020) (expressing doubt whether the Manager Rule applies to FWA retaliation claims); see also Barone v. Palm Beach Hotel Condo. Ass'n, Inc., 262 So. 3d 767, 768, n.1 (Fla. 4th DCA 2018) (per curiam) (hesitating to apply the Manager Rule to an FWA retaliation claim because "federal courts are split as to whether the '[M]anager [R]ule' applies to retaliation claims under Title VII").

Ludwig specifically responds only to DBUSACC's arguments concerning causation and his request for injunctive relief.  <u>See generally</u> Response. However, Ludwig additionally argues that DBUSACC should be precluded from filing a successive motion to dismiss asserting arguments that could have been made when DBUSACC filed the Renewed Motion.  <u>Id.</u> at 2-4.  Ludwig also contends that, in the absence of discovery, the Complaint is sufficiently plausible and that DBUSACC's requests for more specific allegations are improper.  <u>Id.</u> at 4-5.

Before addressing the merits of the arguments raised in the SAC Motion and Response, the Court rejects Ludwig's contention that DBUSACC has improperly filed successive motions to dismiss.  <u>See id.</u> at 1-4. Ludwig argues that because DBUSACC objected only to the Magistrate Judge's recommendation in the Report that the <u>Aery</u> "good-faith belief" standard should apply in this case, DBUSACC may not now seek dismissal of other aspects of the claims set forth in his Amended Complaint that, in his view, had survived DBUSACC's Renewed Motion.  <u>Id.</u> at 1-2.  In support of this argument, Ludwig cites <u>Manns v. City of Atlanta</u>, No. CIV.A.1:06CV0609-TWT, 2006 WL 2466836, at *1 (N.D. Ga. Aug. 23, 2006), and <u>Pinellas Suncoast Transit Auth. v. Mincom, Inc.</u>, No. 8:06-cv-2042-T-17-EAJ, 2007 WL 2225812, at *5 (M.D. Fla. July 31, 2007).  In doing so, however, Ludwig misconstrues the holdings of these and similar cases.   These cases stand for the simple proposition that Rule

12(g) requires a defendant responding to a complaint to raise all permitted Rule 12(b) defenses together in a single, consolidated motion, rather than multiple or successive motions (subject to limited exception),[15] directed to that same complaint.   Here, DBUSACC complied with Rule 12(g) by filing the SAC Motion raising all of its challenges to Ludwig's SAC after he filed it.   Rule 12(g) does not preclude a defendant from filing a Rule 12(b) motion seeking to dismiss a newly filed amended complaint simply because the defendant had previously sought dismissal of an earlier filed complaint.   <u>See</u> Rule 12(g).   Moreover, Ludwig's view that other aspects of his previous Amended Complaint "survived" ignores the fact that the Court dismissed his Amended Complaint without prejudice and permitted him to file a second amended complaint.   In doing so, the Court made no finding that any particular claim was sufficiently pled.[16] Therefore, DBUSACC's filing of the SAC Motion is not improper, and the Court must consider the merits of the arguments raised there.

Upon careful review of the SAC the Court finds that Ludwig's threadbare and conclusory allegations that he "objected to" DBUSACC's various alleged violations do nothing to apprise the Court or DBUSACC of how Ludwig engaged in protected activity under Florida Statutes section 448.102(3).   <u>See generally</u>

---

[15]    <u>See</u> Rule 12(h)(2).

[16]    Although, the Magistrate Judge recommended deferring resolution of DBUSACC's causation and available remedy arguments until the summary judgment stage, <u>see</u> Report at 17-18, the Court did not adopt those portions of the Report.

SAC; <u>see also</u> SAC Motion at 11-12.   In the Response, Ludwig complains that he has not yet engaged in discovery.[17]   <u>See</u> Response at 5.   The problem with this contention, of course, is that it puts the discovery cart before the pleading horse.   <u>Brown v. Crews</u>, No. 3:13-CV-36-J-34PDB, 2015 WL 736191, at *5 (M.D. Fla. Feb. 20, 2015).   While the liberal pleading standard of the Rules does not require a plaintiff to develop all of the facts prior to filing a complaint and obtaining discovery, it "does not unlock the doors to discovery for a plaintiff armed with nothing more than conclusions."   <u>Samuel v. Bank of Am.</u>, No. 114CV00002TCBLTW, 2014 WL 12621239, at *3, n. 3 (N.D. Ga. July 22, 2014), <u>report and recommendation adopted</u>, No. 1:14-CV-2-TCB, 2014 WL 12625094 (N.D. Ga. Aug. 11, 2014) (citing <u>Iqbal</u>, 556 U.S. 679-79).   A plaintiff first must be able to plead a plausible claim to relief.   <u>See</u> <u>United States v. Cuya</u>, 964 F.3d 969, 973 (11th Cir. 2020) (acknowledging that in civil cases a party generally "may not seek discovery until after he has not only filed a complaint, but a well-pleaded one") (citing <u>Iqbal</u>, 556 U.S. at 678-79; <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1367 (11th Cir. 1997) (remaining citations omitted)).

---

[17]     Notably, Ludwig insists in the Response that he "is aware . . . of the objections he made to DBUSACC."  <u>See</u> Response at 4.  Given his purported awareness of his objections, the exceptional lack of factual allegations in the SAC as to the manner in which he objected is particularly perplexing.  Moreover, it fails to support any purported need for discovery to plead facts showing that he engaged in protected activity.

Ludwig also argues that plausibility, not specificity, is the applicable pleading standard in FWA retaliation cases.   See Response at 5.   He is correct. However, even drawing all reasonable inferences in Ludwig's favor, his conclusory allegations that he "objected to" DBUSACC and "complained to his employer . . . that its policies were in violation of numerous laws and regulations" merely amount to unadorned, formulaic recitations of the first element of an FWA retaliation claim, which are not entitled to a presumption of truth.[18]   See SAC ¶¶ 18, 21, 23, 25, 28, 42; see also SAC ¶¶ 30b-31b.   And because he fails to support those conclusions with any factual allegations, he has failed to state a claim that is plausible.   Nowhere does Ludwig provide any factual allegation about when he raised any objection, to whom he communicated the objection, or how he did so.   Nor does he allege the substance or context of any objection.   Indeed, while Ludwig states that he "objected" to various practices, he fails to allege that he communicated any particular objection to anyone at DBUSACC.[19]   Ludwig's vague and conclusory

---

[18]      As noted, to state a prima facie claim of retaliation under the FWA, a plaintiff must show "(1) he objected to or refused to participate in any illegal activity, policy, or practice of the employer; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to his objection or refusal."   See LE Publications, 298 So. 3d at 645 (citing Aery, 118 So. 3d at 916).   Because Ludwig's FWA claim in the SAC is predicated on DBUSACC's alleged actual violations of various FINRA Rules and SEC regulations, the parties no longer dispute whether the Kearns or the Aery standard applies in this case.   See generally SAC Motion, Response.   Instead, the parties proceed as if the standard articulated in Kearns applies in this case.   In the absence of any allegation that Ludwig acted in reliance on a good faith belief that DBUSACC acted in violation of law, the Court assumes, without deciding, that the Kearns standard applies in this case.   Kearns, 157 So. 3d at 462-65.

[19]      The closest Ludwig comes to suggesting that he actually communicated any objection

allegations are entirely devoid of factual support and insufficient to state a plausible claim that Ludwig engaged in protected activity as required to state an FWA claim.   See Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262.   Therefore, Ludwig has failed to allege facts to plausibly satisfy the first element of a prima facie FWA retaliation claim and the SAC is due to be dismissed.

DBUSACC additionally argues, without elaboration, that objections to FINRA rules "do not fall within the FWA's definition of a 'law, rule, or regulation.'"   See SAC Motion at 14.   In support, DBUSACC cites one case: Odom v. Citigroup Global Mkts. Inc., 62 F. Supp. 3d 1330 (N.D. Fla. Nov. 20, 2014).   See id.   Because the Court finds that the SAC is insufficient regardless of whether FINRA rules constitute a "law, rule or regulation" under the FWA, the Court need not address Defendant's arguments regarding the FWA and FINRA Rules and heeds the caution to avoid unnecessary determinations of state law.[20]   United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting in the context of determining whether to exercise discretionary

---

he may have harbored is in paragraph 21 where he states, "[o]ver his objection, Plaintiff was directed by the head of Compliance to find ways to approve transactions for senior level employees and that it was not necessary to do so for lower level employees."   SAC ¶ 21. However, this conclusory allegation – devoid of any factual content – is wholly insufficient to support a plausible inference that Ludwig engaged in activity protected by the FWA.

[20]   This includes DBUSACC's argument that certain of the FINRA Rules on which Ludwig relies were not in effect in 2016 when he claims to have objected to violations of those rules. See SAC Motion at 8-12.

jurisdiction over a state law claim that "[n]eedless decisions of state law should be avoided").

Moreover, even setting aside Ludwig's failure to sufficiently plead the first element of an FWA retaliation claim, the Court finds that Ludwig has failed to sufficiently allege the third element of his prima facie claim – that the alleged "adverse employment action was causally linked to his objection."  See LE Publications, 298 So. 3d at 645 (citing Aery, 118 So. 3d at 916).   In the SAC Motion, DBUSACC asserts that the only adverse action Ludwig alleges in the SAC is his termination on May 18, 2018.  See SAC Motion at 18-20.   The Court agrees.   Indeed, although Ludwig alleges in the SAC that "[r]ather than take steps to comply, [DBUSACC] took away additional responsibilities from" him, such a conclusory allegation is entirely insufficient to plausibly allege an adverse employment action.  See Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262.  Nevertheless, even assuming that such a conclusory allegation, absent any supporting factual allegations, could serve as an adverse employment action for purposes of an FWA retaliation claim, Ludwig fails to assert any facts to support a plausible inference that there is any causal connection between his purported protected activity and either his termination from DBUSACC or the reduction of his responsibilities.  See generally SAC.  This failure, too, is fatal to Ludwig's claim.

While the causal connection element is to be construed broadly such that "a plaintiff need only show that the protected activity and the adverse action are not wholly unrelated," see Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (citing Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999)), "to meet even this low threshold of proof of causation, the plaintiff must offer some factual basis from which a jury could infer that the protected activity caused the adverse employment action," see Winnie v. Infectious Disease Assocs., P.A., No. 8:15-CV-2727-T-35MAP, 2016 WL 11670293, at *3 (M.D. Fla. Sept. 21, 2016) (quoting Watters v. Harsco Metals, No. 2:14-CV-00483-TMP, 2014 WL 3401456, at *8 (N.D. Ala. July 11, 2014). This Ludwig has not done. Notably, in Winnie, the Court found a plaintiff's allegation that she "was terminated 'as a result of [her] objections'" was insufficient to satisfy the causation element of her FWA retaliation claim. Id. Here, Ludwig's allegations are even more deficient than the Winnie plaintiff's, in that he does not even assert a conclusory allegation that he was terminated "as a result of" or because of his objections.    See generally SAC.

Further, to the extent that Ludwig would seek to rely on temporal proximity to establish the causation element,[21] the SAC is devoid of any

---

[21]    Notably, in the Response, Ludwig does not argue that the temporal proximity between his alleged protected activity and the adverse employment actions satisfies the causation element of his claim.  See generally Response.  Instead, he maintains that pursuant to the "plausibility" pleading standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 678, he need not specify the dates of his alleged objections to state a claim to relief.  See

allegations suggesting when he raised any objection at all.  As such, he provides no timeline from which the Court could draw a plausible inference that Ludwig's protected activity occurred near in time to the alleged adverse employment action.  <u>See generally</u> SAC.  At most the allegations in Ludwig's SAC suggest the possibility that DBUSACC retaliated against him, but they fall far short of supporting a plausible conclusion that DBUSACC did so.  For these reasons, Ludwig has failed to state a prima facie claim that DBUSACC retaliated against him in violation of the FWA, and his SAC is due to be dismissed.[22]

## V.    Conclusion

For all of the foregoing reasons, the Court will grant the SAC Motion and dismiss Ludwig's SAC for failure to state a plausible claim to relief.   In all other respects, the SAC Motion will be denied as moot.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Dismiss Second Amended Complaint and Motion to Strike Certain Claims for Relief (Doc. 48; SAC Motion) is **GRANTED, in part, and DENIED, in part**.

---

Response at 5.  Thus, it appears that Ludwig does not intend to rely on temporal proximity to establish the causation element of his FWA claim.

[22] Because the SAC is due to be dismissed, the Court need not address the alternative request to strike portions of it.

a. The SAC Motion is **GRANTED** to the extent Plaintiff's claims are **DISMISSED** pursuant to Rule 12(b)(6).

b. The SAC Motion is otherwise **DENIED**.

2. The Clerk of the Court is directed to enter judgment, terminate all pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 22nd day of March, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc27
Copies to:
Counsel of Record